Allen, P.
The case of Nash v. Upper Appomattox Co. 5 Graft. 332, decided that the proprietor, whose were injured by the erection of a dam across the r*ver> might sue out the writ of ad quod damnum, authorized by the 9th section of the act of February 23d, 1835, Sess. Acts, p. 82, although no previous writ to condemn land for the abutments and other purposes had been sued out by the company. This was a proceeding under the 9th section of said act, for the purpose of ascertaining and assessing damages alleged by Elizabeth Harding to have been sustained by her in consequence of the erection of a dam by the company, occasioning the water to back up and rise and remain higher along her low grounds on the river, than it would have done but for the dam ; whereby she was unable to drain her low grounds; and the water in the creeks, branches and ditches was prevented from passing off freely into the river, occasioning accumulations of sand, whereby said creeks, &c. were more liable to overflow, and the lands thereby rendered more subject to inundation and of less value ; and that such damages were never foreseen or estimated by the jury impanneled when the dam was erected ; and had never been satisfied, in any way.
An inquisition was taken on the 2d of June 1841, assessing the damages to five hundred. dollars ; which being returned to the County court, the appellants filed exceptions to the writ and inquest, and moved to quash the same; and the motion was continued at their instance. At a subsequent term, the death of the plaintiff in the writ was suggested; and on motion of George M. Harding, her administrator, a scire facias was awarded to revive the cause in his name, as administrator as aforesaid. At a subsequent term, on the motion of said George M. Harding and others, the heirs of said Elizabeth Harding, it was ordered that the order awarding the writ of scire facias to revive in *3 the name of said George M. Harding, as administrator, should be set aside; and, on motion of the heirs, a writ was awarded to them to revive the cause in names. Upon the return of this writ the appellants appeared and demurred thereto. The County court overruled the' demurrer; and after hearing the testimony, overruled the motion to quash the writ and inquisition,' and entered judgment in favor of the heirs for the damages assessed : The judgment being affirmed by’the Circuit court, the appellants have appealed to this court. '
Two questions'are presented, by the appeal: First, Whether the case could be revived at all 1 And secondly, If.it could be revived, whether the revival should be in the name of the personal representative or the heir at law ?
If this had been an action on the case for a nuisance to the freehold of the plaintiff below, the rule that actio personalis moritwr cum persona, might have applied : for such causes of action died with the person. 1 Wms. Saund. 217, n. 1; Harris v. Crenshaw, 3 Rand. 14. And although the 64th section of the statute, 1 Rev. Code, p. 390, was an extension of the statute de bonis asportatis, 4 Ed. 3, ch. 7, so as to embrace actions brought against, as well as those brought by, executors and administrators, it has not been construed as extending to injuries done to the freehold or to the person. The cause of action in such a case imputes a tort; it arises ex delicto; the plea must be not guilty; and if either party died before verdict, the action could not be revived.
But it seems to me the rules applicable to an action on the case for a nuisance do not apply to this proceeding. The legislature, by the act under consideration, section 2, authorized and required this company to construct dams on the river, from the head of their canal near Petersburg to the town of Farmville, so as *4 to afford a navigation of two feet depth of water at all seasons of the year. To comply with this requisition was necessary to take private property in some instances absolutely; and to subject it in other instances to a charge or easement materially impairing its value. By this law, the jus publicum, in the navigation of this stream has been conferred on the company for the purpose of improving the navigation; and such being the case, private rights must yield to the public, upon just compensation being made. As was remarked by President Tucker in the Tuckahoe Canal Co. v. Tuckahoe Railroad Co. 11 Leigh 42, 74, “It may be truly said that this jus publicum, this eminent domain, is the law of the existence of every sovereignty;” and “though the sovereignty has granted its land, or its privileges, without any express reservation to take them for public uses, yet that right is necessarily implied.” As every proprietor holds subject to this public right, and as the legislature, in the exercise of the right of eminent domain, can alone prescribe the mode of making just compensation, it cannot be said that a wrong is done to the owner when such compensation is reserved for him, and a mode prescribed for ascertaining the amount and securing its payment. So far from assimilating it to a proceeding for a tort, and to be treated like a cause of action which arose ex delicto, it may more properly be likened to a cause of action arising ex contractu; as growing out of the implied obligation to surrender to the public use, upon the engagement of the public to make just compensation.
In the law under consideration, the right is conferred on the company to acquire private property by purchase, and to settle by contract any damages which their works might occasion to adjoining lands; or if they could not agree with the proprietor of the lands necessary for abutments, or whieh may probably be -damaged or affected, the 8th section required them to *5 take out a writ of ad quod damnum ; and upon paying the value of the lands located for abutments, and the damages assessed, and costs, the law declares the pany shall become seized in fee simple of the lands used for the abutments, and be authorized to erect the dam. Whether the company adopts this course, or by purchase and agreement with the proprietors acquires the necessary land for abutments, and settles by contract the probable damages, in either event, the 9th section of the act gives a remedy to the proprietor who sustains damages not foreseen, estimated, and satisfied. In this proceeding the right to erect the dam, or the legality of the dam when erected, is not in contest. It cannot be treated as a nuisance; and the whole effect is to ascertain the extent to which the individual has been required to surrender private property for public uses, upon the undertaking of the public to make just compensation; and to fix and assess the amount of such compensation. Under the general law in regard to mills, it was not essential to give judgment for the amount so ascertained before the court could give leave to erect the dam; the leave to erect the mill being valid, though no order was made directing the payment of damages; but the payment of such damages to the persons entitled, is imposed by law as a condition to protect the party against the suit of the person injured. Coleman v. Moody, 4 Hen. & Munf. 1; Anthony v. Lawhorne, 1 Leigh 1. Under the 8th section of the law under consideration, no provision is made requiring the court to give judgment for the value of the lands and damages assessed. The inquest was to be 'returned and recorded, and upon payment of the sums assessed the company became seized of the lands and was authorized to erect the dam.
The 9th section had reference principally to injuries which were made apparent by the erection of the *6 dam, and therefore not foreseen by the jury where there had been a jury, or settled by contract with the proprietors. As payment was not necessary to protect the company from the suit'of the party injured, as in the case of the damages assessed under the preceding section before proceeding with the works, this section provides that the jury shall enquire of and assess the damages; and thereupon the person suing the writ shall be entitled to the damages and costs; and the court shall enter judgment for the same. The right of the proprietor grows out of the appropriation of his property; and the statute provides a cheap and expeditious mode to ascertain the amount of his compensation, and to enforce the payment. I do not think that the rule in relation to actions ex delicto for injuries to the freehold, applies to this proceeding ; but on the contrary, that it may be revived in the name of the representative entitled to the compensation.
But it seems to me the personal representative, and not the heirs,' was the party entitled to receive the amount of the compensation assessed, and to revive the proceeding for the purpose of getting judgment and execution.
The property taken or subjected to the easement in favor of the company, belonged to the intestate. Her lands were rendered more liable to inundation, and the permanent value impaired to that extent during her life time. The easement was imposed and the right to compensation arose, as soon as the extent of the reflow was made manifest by the erection of the dam; and from the time that the proprietor provided for in this 9th section evinced a determination to claim the compensation for the loss, by instituting his proceeding under this act to have the amount ascertained, the claim became a personal demand; as much so as it would have been if the damages had been assessed and the inquisition returned and recorded, as provided *7 for in the 8th section. The act declares that the jury shall assess the damages, and thereupon the person suing the writ shall be entitled to the damages. damages for permanent injuries, such as those set forth in the writ, can be assessed but once. Having once obtained compensation to the extent that the property has been impaired in value by the easement, he cannot recover again for the continuance of the easement. The heir inherits and holds the land subject to this easement as long as the dam is legally continued; and cannot recover that which never descended upon him. It, is like the action on a covenant of seizin for eviction or breach in the life time of the ancestor. There the action survives to the personal representative., because, as was said in Lucy v. Levington, 2 Levinz 26, the eviction being to the ancestor, he cannot have an heir to this land.
Nor do I conceive that this can be changed by the action of the administrator. It appears from the recitals in the order of the County court, that he was one of the heirs uniting in the motion to set aside the order awarding the writ of scire facias to revive in the name of the administrator, and awarding the writ to revive in the names of the heirs. The scire facias to revive was intended to continue the action in the name of the representative who legally succeeded to the rights of the intestate. New parties, having no claim to intervene in the controversy, cannot be permitted to take the place of the proper representative to continue the controversy and to collect the money. It would be the institution of a new proceeding instead of a continuance of the old. The heirs as such have no right to the subject; it is assets to be paid out and distributed in the due course of administration. I think, therefore, the demurrer to the scire facias should have been sustained; and that the order made on the 3rd of July 1843, setting aside the previous order *8 awarding a scire facias to the administi’ator to revive the cause in his name, and awarding a scire facias to the heirs to revive the cause in their name, should be set aside: and leave given to the administrator of said Elizabeth Harding to sue out a scire facias to revive the cause in his name; and for further proceedings.
Moncure, Lee and Samuels, Js. concurred in the opinion of Allen, J.
Daniel, J. dissented.
Judgment reversed.